**STATE of Tennessee, Appellee,**

v.

**Michael Angelo COLEMAN, Appellant.**

Supreme Court of Tennessee,
at Jackson.

July 27, 1981.

A. J. Archibald, Memphis, for appellant.

Gordon W. Smith, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

Appellant Michael Angelo Coleman has appealed his conviction of murder in the first degree in the perpetration of a robbery, and the sentence of death.[1] He questions the denial of his motion to sever his trial from that of his codefendant, Michael Anthony Bell, the refusal of the trial court to remove a juror for alleged cause, the admission in evidence of appellant's confession and that of his codefendant, and the sufficiency of the convicting evidence generally. Appellant also insists that sections of T.C.A. § 39–2404, dealing with punishment for first degree murder, are unconstitutional.

After consideration of the several assignments of error and of the entire record, we are of the opinion that the verdict and sentence are sustained by the evidence and that no reversible error was committed in the trial. We are also of the opinion that T.C.A. § 39–2404 is constitutional.

Appellant and his codefendant were convicted of the killing of Leon Watson during a robbery, which occurred in Memphis, Tennessee, on May 2, 1979. That morning, Mr. Watson left his home to go to a nearby grocery store. He did not return. At about 10:00 p. m. Mrs. Watson was contacted by a representative of the Memphis Police Department and was taken to view a white 1964 Buick automobile, which she identified as being that of her husband's. Blood was found on the seat and floor of the automobile, and a bullet was found in the left door.

1. Michael Anthony Bell, a codefendant, was tried with appellant and, after pleading guilty to murder in the first degree, was sentenced to life imprisonment. His case is not involved in the present appeal.

Appellant and codefendant Bell were arrested about one hour later on another charge. The next morning, at about 5:15 a. m., both appellant and Bell were advised of their *Miranda* rights. Appellant then told the officers of finding a body of a black man in a field near Third Street in Memphis. He directed officers to the scene where they found the body of Mr. Watson. Mr. Watson's empty billfold was on the ground near his body. Items from Mr. Watson's automobile was strewn around the body, indicating the automobile had been ransacked before it was driven from the scene.

Appellant was advised again of his *Miranda* rights. Thereafter, he confessed to shooting and killing Mr. Watson in Mr. Watson's automobile. He also admitted going through the victim's billfold after the shooting, and stated he had removed the C.B. radio from the automobile, but had decided not to keep it.

Codefendant Bell, in his statement to the police and in his testimony at the trial, named appellant as the man who shot and killed Mr. Watson. He also testified that a pistol belonging to Mr. Watson was taken after the shooting and that appellant had taken the gun to his grandmother's house.

Appellant insists the statements given by him to police officers were not given freely and voluntarily and, therefore, should not have been admitted in evidence. It is a truism that an involuntary confession is not admissible in evidence. However, we find nothing in the record to support appellant's contention that his confession was not voluntary. The trial judge held a pretrial hearing on appellant's motion to suppress, and denied the motion "upon the testimony of Patrolman A. C. Speight and Sergeant L. A. Simpson." The transcript of the suppression hearing is not in the record, but both officers testified in the trial and were examined concerning the circumstances attendant the giving of statements by the appellant. Their testimony unequivocally

shows that appellant's confession was freely given and was voluntary. Before any statement was made, appellant was advised of the rights due him under the *Miranda* decision,[2] and he was advised of his rights a second time before he confessed to the killing of Mr. Watson.

Counsel argues from the fact that appellant was placed in jail at 1:00 a. m. and questioning by the officers began at 5:00 a. m., that appellant was denied the opportunity to sleep over such a period of time that his resistance had dissipated and that he would sign anything in order to sleep. The argument is ingenious but is not borne out by the record. As noted by counsel, what appellant did between 1:00 a. m. and 5:00 a. m. is not recorded. What is recorded is the fact that appellant instigated the questioning by indicating that he had information to give the officers.

Considering the totality of circumstances attendant the interrogation of appellant, we are of the opinion the statements given to the police by appellant were the fruit of proper custodial interrogation,[3] were voluntarily given, and were properly admitted in evidence. We are also of the opinion that the confession of appellant, buttressed as it was by physical evidence and the testimony of codefendant Bell was sufficient to justify the jury finding beyond a reasonable doubt that appellant was guilty of "murder in the first degree in perpetration of a robbery."

Appellant has not specifically challenged the sufficiency of the evidence that is the basis of the jury's imposition of the death penalty, but directs his challenge to the issue of constitutionality of the Death Penalty Act. However, T.C.A. § 39–2406(c) specifically requires this court, in reviewing a sentence of death for murder in the first degree, to determine whether (1) the sentence of death was imposed in an arbitrary fashion; (2) the evidence supports the jury's findings of a statutory aggravating circumstance or statutory aggravating circum-

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. For authorities on the subject of custodial interrogation, *see* Annot., 31 A.L.R.3d 565 (1970).

stances; (3) the evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance or circumstances so found; and (4) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant."

■ A jury may impose the death penalty on a defendant found guilty of murder in the first degree only upon its finding that one or more aggravating circumstances, listed in the statute, are present, and that such circumstance or circumstances are not outweighed by mitigating circumstances. *See* T.C.A. § 39–2404(i).

In this case, in addition to finding that appellant was guilty of murder in the first degree in the perpetration of a robbery,[4] the jury found appellant had been "previously convicted of one or more felonies other than the present charge which involved the use or threat of violence to the person."[5] The jury also specifically found that there were no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstances, and fixed appellant's sentence at death.

We have heretofore related, in capsule form, evidence supporting the jury's finding that appellant is guilty of murder in the first degree in the perpetration of a robbery. As to the other aggravating circumstance found by the jury, the record shows that appellant had been convicted for assault with intent to commit robbery with a deadly weapon, assault with intent to commit murder in the first degree, kidnapping, and robbery with a deadly weapon. The testimony detailing appellant's felony convictions, each of which involved the use of threat or violence to the person of the victim, is not controverted. Furthermore, appellant introduced no evidence of a mitigating circumstance. He only called one witness at the sentencing hearing, Dr. John Hutson, a professor of psychiatry at the University of Tennessee Center for the

Health Sciences. Dr. Hutson's testimony necessarily was confined to the results of his examination of appellant before trial. Dr. Hutson found "no evidence of any serious mental illness which would have affected appellant's ability to appreciate either the wrongfulness of his actions or his ability to conform his behavior to the requirements of the law at that time." He also expressed the opinion that appellant was fully able to appreciate the charges against him and had the ability to confer with an attorney in preparation of his defense.

■ We are of the opinion that the evidence clearly supports the jury's imposition of the death penalty on its finding of aggravating circumstances listed in the Death Penalty Statute and the lack of any mitigating circumstance. We are also of the opinion that under the circumstances of this case, the imposition of the death penalty by the jury was neither arbitrary nor excessive or disproportionate to the penalty imposed in similar cases.

■■ Appellant has challenged the constitutionality of the Tennessee Death Penalty Act in a number of respects. The issues raised by appellant have been considered and rejected by this court in other cases. For example, the contention that the statutes are unconstitutional in that they do not require notice to the accused of the particular aggravating circumstances upon which the State will rely was considered and rejected in *State v. Berry,* 592 S.W.2d 553 (Tenn.1980), and in *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), cert. denied, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980). In *Houston, supra,* the contentions now made with respect to the alleged vagueness of the standards for guiding the jury's sentence determination, use of hearsay evidence at the sentencing hearing, and that the imposition of the death sentence is cruel and inhuman treatment were considered and rejected. *See also State v. Dicks,* 615 S.W.2d 126 (Tenn.1981). Likewise found to be without merit was the

---

4. T.C.A. § 39–2404(i)(7).

5. T.C.A. § 39–2404(i)(2).

challenge to the efficacy of Rule 47 of this court to afford a meaningful or realistic comparison of cases arising under the death penalty statutes so as to prevent the arbitrary or capricious imposition of that penalty. *See State v. Groseclose, et al.*, 615 S.W.2d 142 (Tenn.1981).

Appellant also has assigned as error the action of the trial judge in refusing to sever his trial from that of his codefendant Bell. A motion for severance is addressed to the discretion of the trial judge, and his exercise of discretion in denying such a request will not be reversed unless it appears that the defendants were prejudiced by his failure to do so. *Tomlin v. State*, 207 Tenn. 281, 286, 339 S.W.2d 10, 12 (1960); *Dorsey v. State*, 568 S.W.2d 639, 641 (Tenn. Cr.App.1978). In *Woodruff v. State*, 164 Tenn. 530, 538, 539, 51 S.W.2d 843, 845 (1932), this court noted that:

> It may have been to the interest of each [defendant] that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The state, as well as the persons accused, is entitled to have its rights protected, and when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants.

Appellant contends that he was unfairly prejudiced by being forced to trial with his codefendant Bell, who had plead guilty to the offense for which they both were indicted. Bell's guilty plea, standing alone, did not require severance of appellant's trial from that of Bell's, since the plea did not implicate appellant. *See Dorsey v. State*, 568 S.W.2d 639 (Tenn.Cr.App. 1978). The introduction of Bell's out-of-court statement into evidence by the State did raise the specter of a *Bruton*[6] violation, which could have been avoided by a severance of Bell's case from that of appellant, but this specter was removed by Bell taking the witness stand and subjecting himself to examination by appellant's counsel. *See*

*Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). Under these circumstances, we see no abuse of discretion on the part of the trial judge in refusing to sever the cases.

Appellant also insists the trial judge erred in failing to remove a juror for alleged cause. The transcript, as approved by counsel for appellant, does not contain the voir dire examination. Neither does counsel detail the voir dire in either his motion for a new trial or in his brief. He does indicate in his brief that the juror (who is not identified) expressed the opinion he could fairly decide the case on the evidence. There is nothing in the record to indicate that the unnamed juror was other than impartial.

The assignments of error are overruled. The judgment of conviction and the sentence imposed pursuant thereto is affirmed. The sentence will be carried out as provided by law on January 14, 1982, unless otherwise stayed or modified by appropriate authority. Costs are taxed against appellant.

HARBISON, C. J., and FONES and DROWOTA, JJ., concur.

BROCK, J., concurs on all issues except the death penalty. See dissent in *State v. Dicks*, 615 S.W.2d 126, 132.

---

6. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).