# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 1999 Session

## STATE OF TENNESSEE v. NICHOLAS O'CONNOR AND NIKOL LEKIN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-06205  Carolyn Wade Blackett, Trial Judge**

---

### No. W1998-00015-CCA-R3-CD - Decided October 2, 2000

---

This is a case involving two defendants: O'Connor, the mother's friend, was convicted of Aggravated Child Abuse through injury and Aggravated Child Abuse through neglect. Lekin, the mother, was convicted of Aggravated Child Abuse through neglect. We affirm the conviction of Aggravated Child Abuse through injury, as we hold that a four-year-old who received a skull fracture, epidural bleeding, swelling and bruising around the eyes and face, and the pain associated with said injuries has sustained "serious bodily injury." Further, we find sufficient evidence to support both convictions for Aggravated Child Abuse through neglect. Finally, we reject the arguments that the state was required to elect a specific "serious bodily injury" and that Aggravated Child Abuse through neglect is not an offense in Tennessee.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA McGEE OGLE, J., joined.

Marvin E. Ballin and Mark A. Mesler, Memphis, Tennessee, for the appellant, Nicholas O'Connor. Michael E. Scholl, Memphis, Tennessee, for the appellant, Nikol Lekin.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Smith Nichols, Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

The defendants, Nicholas O'Connor and Nikol Lekin, appeal from convictions by a Shelby County jury. Defendant O'Connor was convicted of one count of Aggravated Child Abuse through injury and one count of Aggravated Child Abuse through neglect. For these offenses, he was sentenced, as a Range I offender, to two concurrent twenty-year terms. Defendant Lekin was convicted of one count of Aggravated Child Abuse through neglect. For this offense, she was sentenced, as a Range I offender, to one fifteen-year term. Both defendants now appeal but raise

different arguments. Defendant O'Connor asserts that:
(1) Insufficient evidence supported the jury's finding of "serious bodily injury" necessary for either of his convictions.

Defendant Lekin asserts that:
(1) The trial court erred in its failure to sever her case from defendant O'Connor's case;
(2) insufficient evidence supported the jury's verdict;
(3) the trial court in various regards deprived her of a unanimous verdict; and
(4) she was convicted of an offense that does not exist at statute in Tennessee.

After careful review, this Court affirms the judgments in all respects.

## FACTS

At the time of the offense, February 27, 1997, the two defendants, O'Connor and Lekin, were living together with Lekin's children in Moscow, Tennessee. On that date, Lekin left her four-year-old daughter, A[1], with O'Connor. O'Connor abused the child. He struck the child on her bottom, propelling her into a bathroom door-facing. The impact caused A to sustain bruises on her bottom, significant bruises to the face and eyes, and a skull fracture. In fact, for days following, she was barely recognizable with large black and yellow eyes swollen nearly shut.

Despite this appearance, neither Defendant O'Connor nor Defendant Lekin took the child to the hospital. Two days after the offense, Defendant Lekin's sister, who had seen the child, called Children's Services. Under their direction, A was finally transported to the hospital with Defendant Lekin.

Once admitted to the hospital, A was placed in intensive care for observation. Her injuries, including a skull fracture and epidural bleeding, were identified as intentionally inflicted blunt force trauma, and Child Services removed her from the defendants' care. However, A did not require any treatment at the hospital; instead, her stay was simply for diagnostic and observation purposes.

On account of this abuse and their failure to more promptly seek medical care for A, Defendants O'Connor and Lekin were indicted[2] and tried. Convicted after a jury trial, their appeal is now before this Court.

## ANALYSIS

### Motion for Severance

---

[1] It is this Court's policy not to identify child victims by name.

[2] Both defendants were indicted for Aggravated Child Abuse through injury and through neglect. The indictments state that these offenses occurred "during the period of time between February 26, 1997 and March 1, 1997" and resulted in "serious bodily injury."

Defendant Lekin argues that the trial court erred when it denied her motion to sever her case from that of O'Connor. After review, we find that the trial court did not abuse its discretion in denying the defendant's severance motion.

Defendant Lekin's principal contention is that as she was tried with Defendant O'Connor, evidence of intentional abuse, otherwise irrelevant to her case, reached the jury and unfairly prejudiced them. Specifically, she notes that the testimony of A describing the actual abuse and certain medical testimony describing the injuries as "intentionally inflicted" served unfairly to harden the jury against her.

Conversely, the state points out that, in fact, very little evidence concerning the actual intentional abuse got before the jury. The only testimony, the state claims, that concerned the actual abuse was the testimony of A. All six of the other witnesses testified to either the events after the abuse or the medical condition of A, topics which were necessarily relevant to Defendant Lekin's neglect charge.

Tenn. R. Crim. P. 14(c) governs the granting or denial of a severance of defendants. The decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. See State v. Coleman, 619 S.W. 2d 112, 116 (Tenn. 1981); State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990); State v. Kyger, 787 S.W.2d 13, 20 (Tenn. Crim. App. 1989). Stated in another manner, a trial court will not be found to have abused its discretion in denying a severance unless "the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty." State v. Burton, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988) (quoting Hunter v. State, 227 Tenn. 672, 682, 440 S.W.2d 1, 6 (1969)).

In this case, we conclude that the trial court did not abuse its discretion in denying Defendant Lekin's motion for severance. The vast majority of the evidence adduced at trial concerned the events following the abuse, and while this Court does understand Defendant's Lekin's concern that the evidence of intentional abuse, however limited, had the potential for prejudicing the jury against her, we conclude that, in reality, no such prejudice occurred. In support of this conclusion, we note that this evidence describing the abuse was very clear in at least two regards: Lekin was not there, and Lekin had nothing to do with it. Further, the jury was instructed not to consider the intentional abuse against Lekin, but instead, to consider the neglect charge separately and carefully. We presume that the jury followed its instruction. See State v. Cribbs, 967 S.W.2d 773, 784 (Tenn. 1998). Therefore, this Court does not detect any real prejudice in the trial court's decision to try the two defendants together and concludes that the trial court did not abuse its discretion.[3]

---

[3] In a related matter, Defendant Lekin alleges that certain trial sidebars, initiated by either the prosecution or counsel for Defendant O'Connor, were overheard by the jury. These sidebars, she claims, concerned information improper for the jury's consideration. Therefore, she claims prejudice. While this Court when reviewing the trial transcripts was concerned by the issue, we now note that the jury was instructed properly as to which evidence it could and could not consider. Further, we note that while Defendant Lekin alleges "prejudice," she points to no one sidebar nor any one particular theory of prejudicial impact. Therefore, while we find no error or prejudice here, we do note that it is a trial court's responsibility to insure that these situations do not occur.

**Sufficiency of the Evidence: Aggravated Child Abuse through Injury**

Defendant O'Connor argues that the evidence adduced at trial was insufficient to support his conviction for Aggravated Child Abuse through injury. Specifically, he does not challenge that the offense occurred, but rather he argues that the prosecution failed to prove "serious bodily injury" as required by statute. We disagree with the defendant and find that his conviction of Aggravated Child Abuse through injury is supported by sufficient evidence.

In this case, the "serious bodily injury" inflicted upon A by the defendant's abuse was established through A's testimony and medical testimony. A's injuries included:
(1) skull fracture;
(2) epidural bleeding;
(3) swelling around the eyes and face;
(4) non-permanent bruising and discoloration around the eyes and face; and
(5) non-permanent bruising and discoloration on the child's bottom.
On account of these injuries, A was admitted to the hospital and spent fourteen hours in the intensive care unit where the concern was the epidural bleeding and skull fracture. In the end, A healed without receiving any medical treatment other than an aspirin for pain.

Reviewing the jury's verdict, it is for this Court to determine whether these injuries, as established at trial, are sufficient to sustain Defendant O'Connor's conviction for Aggravated Child Abuse through injury. The relevant statutes, Tenn. Code Ann. §§ 39-15-401 and 402, read:

**Child abuse and neglect.** – (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits a Class A misdemeanor; provided, that if the abused child is six (6) years of age or less, the penalty is a Class D felony.

**Aggravated child abuse and neglect. --** (a) A person commits the offense of aggravated child abuse and neglect who commits the offense of child abuse and neglect as defined in § 39-15-401 and:

(1) The act of abuse results in serious bodily injury to the child . . . .

Further, "serious bodily injury" is defined by Tenn. Code Ann. § 39-11-106(34) as bodily injury which involves:
(a) A substantial risk of death;
(b) Protracted unconsciousness;
(c) Extreme physical pain;
(d) Protracted or obvious disfigurement; or
(e) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty.

Now this Court must determine whether sufficient evidence was adduced at trial to support

the jury's finding that the requisite statutory elements, as recited above, were satisfied.[4] We review this claim under a well-established standard of review. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor reevaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. See id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Deciding O'Connor's sufficiency claim, this Court is guided by similar cases dealing with child abuse. In State v. Jones, 953 S.W.2d 695 (Tenn. Crim. App. 1996), this Court held that "a bad headache, ringing in the ears, and bruising" together with testimony that the injuries "hurt really bad" were sufficient to constitute "serious bodily injury" and thus support an Aggravated Child Abuse conviction involving an eleven-year-old victim. Further, in State v. Betty Levandowski, No. 03C01-9503-CR-00076 (Tenn. Crim. App., filed June 5, 1996, at Knoxville), this Court found that a two-year-old victim covered with "bruises, abrasions, and scabs" which would have caused "considerable pain" had suffered "serious bodily injury." Finally, in State v. Robbie James, No. 01C01-9609-CR-00388 (Tenn. Crim. App., filed Nov. 14, 1997, at Nashville), an Aggravated Child Abuse conviction was affirmed on the basis of cuts and bruising accompanied with painful screams.

Considering these cases, this Court concludes that a jury could find that the injuries and pain inflicted upon A constituted "serious bodily injury." The evidence is sufficient to support a finding that A suffered "serious bodily injury" as a result of defendant O'Connor's abuse. When A was brought into the emergency room, she was diagnosed with a skull fracture and epidural bleeding and immediately placed in the intensive care unit. Those injuries, along with their attendant risk of brain swelling, clearly created "a substantial risk of death." See Tenn. Code Ann. § 39-11-106(34)(A). Likewise, those injuries, in addition to the injuries to A's eyes, resulted in "extreme physical pain"

---

[4] We note that the defendant's sole challenge is to the element of "serious bodily injury." Therefore, as we agree with the defendant's apparent concession that all the other elements were proven, our review here is limited to this one argument.

to A.  See Tenn. Code Ann. § 39-11-106(34)(C).  A, who was six years old at the time of the trial, testified that her injuries "hurt" her and caused her to cry.  Dr. Mark Bugnitz, who treated A in the emergency room, testified that A exhibited pain upon examination, three days after she was injured. Additionally, the injuries to A's eyes constituted "obvious disfigurement."  See Tenn. Code Ann. § 39-11-106(34)(D).  Photographs of A taken in the emergency room and introduced by the state showed that A's eyes and the surrounding tissue were purple and black due to bruising and that there was substantial swelling.  Indeed, A's eyes were swollen shut and, as a result, her vision was "substantially impaired."  See Tenn. Code Ann. § 39-11-106(34)(E).  Jo Jones, an emergency room nurse, testified that one of A's eyes was completely swollen such that the eyelids were almost fused; A had only minimal vision through her other eye.  Therefore, we find sufficient evidence to affirm Defendant O'Connor's conviction of Aggravated Child Abuse through injury.

### Sufficiency of the Evidence: Aggravated Child Abuse through Neglect

Both defendants argue that insufficient evidence was adduced at trial to support their convictions of Aggravated Child Abuse through neglect. Specifically, they argue that the state failed to prove any injury occurring on account of the neglect.  Therefore, they ask that their convictions for Aggravated Child Abuse through neglect be set aside.  We disagree with the defendants and find sufficient evidence supporting the jury's conclusion that the neglect caused "serious bodily injury."

But first, we must note that we review this sufficiency claim under the standard of review set forth above in our previous analysis of Defendant O'Connor's sufficiency claim. See, e.g., Cabbage, 571 S.W.2d at 835.

The crux of this claim is that Aggravated Child Abuse through neglect requires a showing that some discernible injury occurred on account of the neglect.  This Court has had occasion to review this legal assertion before, see State v. Mike Mateyko, No. 01C001-9806-CC-0026 (Tenn. Crim. App., filed Sept. 22, 1999, at Nashville), and has agreed under different facts that some discernible injury must be proven.  See also State v. Kevin R. Mosley, No. 01C01-9108-CC-00235 (Tenn. Crim. App., filed April 29, 1992, at Nashville).  In this case, we distinguish the holdings of both Mateyko and Mosley in that the instant case involves actual and obvious physical injuries to the victim.

Now, we must review the evidence and arguments to determine whether any discernible injury was, in fact, proven in this case.  Again, the defendants argue that no such injury was demonstrated; the State, however, disagrees.  It argues that "serious bodily injury" occurring on account of the neglect was proved at trial through medical testimony and other evidence.  After reviewing these arguments, this Court concludes that the evidence did establish that in the days A was not taken to the hospital, she lingered under a substantial risk of death due to the possibility of attendant brain swelling.  From this evidence, the jury could have concluded that the neglect, the failure to take A to the hospital, created a substantial risk of death in and of itself, apart from the actual infliction of the injury.  Therefore, we find the evidence sufficient.

That is, a jury could properly conclude that Defendant O'Connor was guilty of criminal child

neglect moments after the intentional infliction of injury upon the child and could have found that the neglect continued until the child was taken to the hospital and placed in intensive care for observation.

It is granted that this case presents a more difficult question, however, as relates to the mother, Defendant Lekin. She had no reference point by which to gauge the seriousness of the child's injury until the child's physical anguish became obvious. However, we hold that her decision to knowingly forego medical treatment after the child displayed obvious physical anguish is the crux of criminal child neglect. Therefore, we find that sufficient evidence existed to convict Defendant Lekin as well.

## Deprivation of a Unanimous Verdict

Defendant Lekin contends that the trial court's refusal to grant her motion for a bill of particulars, to require the state to elect specific injuries as the offenses for which it sought convictions, and to instruct the jury that it must unanimously find and indicate a specific serious bodily injury violated her right to a unanimous jury verdict. Conversely, the state contends that no such violation occurred. After review, we find no reversible error.

### *Bill of Particulars*

Defendant Lekin's first contention is that the trial court failed in error to grant her motion for a bill of particulars. A bill of particulars may be ordered to adequately identify the offense charged. See Tenn. R. Crim. P. 7(c). The function of a bill of particulars is to provide a defendant with information about the details of the charge that are necessary in the preparation of his or her defense and to avoid prejudicial surprise at trial. See State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984)(quoting 1 Charles Alan Wright, Federal Practice and Procedure, Criminal, § 129, at 434 (1982)); see also State v. Stephenson, 878 S.W.2d 530, 539 (Tenn. 1994). The defendant should be given enough information about the events charged so that he or she may diligently prepare for trial. See id. Where the indictment is not sufficiently detailed, a bill of particulars will serve this purpose. An abuse of discretion must be shown to demonstrate error in denying a bill of particulars. See Stephenson, 878 S.W.2d at 539.

Defendant Lekin filed a motion for a bill of particulars after the indictment was returned. Defendant had sought by this motion to know exactly what "neglect" and what "injuries" the indictment charged. When the trial court denied this motion by written order, the defendant was left with the language of the indictment which stated the offense, "Aggravated Child Abuse through neglect," and the relevant dates. In this case, given court precedent as regards neglect offenses, this language sufficiently apprised Defendant Lekin of the circumstances or acts alleged as "neglect" and the injuries to the child alleged as "serious bodily injury." While it is true that, at that point, at least two different theories or acts of neglect existed: (1) Defendant Lekin neglected A by leaving her with Defendant O'Connor and (2) Defendant Lekin neglected A by failing to take A to the hospital after the abuse, we cannot find any abuse of discretion in the trial court's denial in light of State v. John Adams and Rita Adams, _____ S.W.3d _____ (Tenn. 2000), No. W1997-00190-SC-R11-CD

(filed June 30, 2000, at Jackson),which holds that as a continuing offense, the State is not required to elect a particular injury and thus a particular act of neglect. See also State v. Lemacks, 996 S.W.2d 166 (Tenn. 1999).

## Election of Injury

Next, Defendant Lekin argues that as there exist several different possible theories of abuse and accordingly several different possible injuries, as outlined above, the trial court should have required the State to elect either which theory or theories of neglect and which injury or injuries upon which it was relying for conviction. The State argues that no such election was necessary; in fact, it argues in its brief that such election is never necessary in a prosecution for neglect. We conclude that the Tennessee Supreme Court's recent decision in State v. John Adams and Rita Adams, _____ S.W.3d _____ (Tenn. 2000), No. W1997-00190-SC-R11-CD (filed June 30, 2000, at Jackson), controls this issue and that, as a consequence, the State was not required to elect any particular serious bodily injury.

Election of offenses is necessary to protect several important interests of a defendant: (1) it enables a defendant to prepare and defend against the specific charges; (2) it protects the defendant from double jeopardy; and (3) it ensures unanimity of the jury verdict. Burlison v. State, 501 S. W. 2d 801, 803 (Tenn. 1973). While all of these interests are crucial, the true import of this doctrine is its protection of a defendant's constitutional right to jury unanimity. See Tidwell v. State, 922 S.W.2d 497, 501 (Tenn. 1996). Entitlement to jury unanimity encompasses not only a right that the jury be unanimous as to which offense constitutes the crime for which the defendant is convicted, but also a right to unanimity regarding the specific act or acts which constitute the offense. See Brown, 823 S.W.2d at 582. To protect this right of the defendant, a trial court has a duty to require the State to elect the particular offenses upon which it relies for conviction and to instruct the jury so that the verdict of every juror will be united on one offense. See Burlison, 501 S.W.2d at 804; see also Shelton, 851 S.W.2d at 136.

Defendant Lekin cites this right to "unanimity" in her brief and argues that as the State was not required to elect either a theory of neglect or a particular "serious bodily injury," the jury verdict convicting her is quite possibly a "patchwork verdict" based on different offenses arguably in evidence. See id. Conversely, the State responds that this is a special case not requiring election. It argues that election is only required where the State is pursuing convictions for discrete crimes and proof of additional discrete crimes has been introduced at trial. See Shelton, 851 S.W.2d at 137. Election is not required, the State continues, where "the crime charged requires the State to prove a continuous course of unlawful conduct." See State v. Hoxie, 963 S.W.2d 737, 742 (Tenn. 1998). Accordingly, the State classifies the instant charge, neglect over the two days between the abuse and hospital admittance, as a "continuing offense" not requiring election, like that defined in Tennessee's anti-stalking provision, Tenn. Code Ann. § 39-17-315(a)(1)(A). See, e.g., Hoxie, 963 S.W.2d 737.

This Court has carefully considered defendant Lekin's argument that she was impermissibly denied a unanimous verdict on account of the trial court's failure to provide for a bill of particulars and the prosecutions' failure to elect a particular "serious bodily injury." After a thorough

examination of the trial record, we acknowledge that the jury was presented with several different theories of neglect. Specifically, the prosecution argued three such theories: (1) Defendant Lekin neglected the child by placing her in the care of defendant O'Connor; (2) Defendant Lekin neglected the child by failing to take the child to the hospital for several days after the abuse; and (3) the child was malnourished. Discerning these three theories, the questions became whether Defendant Lekin was adequately informed about the details of the charge so that she could prepare her defense and avoid prejudicial surprise at trial and whether Defendant Lekin was denied her constitutional right to jury unanimity. Answering these two questions on the basis of the appellate briefs and appellate argument proved a tough and close task for this Court; however, before this decision, we were provided essentially controlling guidance from this state's Supreme Court in its recent decision, State v. John Adams and Rita Adams, _____ S.W.3d _____ (Tenn. 2000), No. W1997-00190-SC-R11-CD (filed June 30, 2000, at Jackson).

In that decision, the Supreme Court held that in aggravated child abuse through neglect cases, the State is not required to make an election of any particular "serious bodily injury" as the offense is a "continuing offense." John Adams and Rita Adams, No. W1997-00190-SC-R11-CD, at *9. So when a defendant or defendants have committed several acts of possible neglect within a discernible time frame, and any one or any combination of these offenses could constitute neglect, then a jury may convict the defendants of neglect without specifying or being forced to specify a particular injury or act. See id. This decision, when read in conjunction with State v. Lemacks, 996 S.W.2d 166 (Tenn. 1999), controls the instant case. State v. Lemacks held that the right to a unanimous verdict was not deprived when a general verdict convicted the defendant of simply "DUI" while, in fact, two different theories of guilt were before the jury. Different theories of guilt were presented; however, each was based on a single criminal occurrence, albeit a "continuing" one. Therefore, we find no error. Put differently, once the arguably separate acts of neglect are combined into one "continuing offense," as allowed by John Adams and Rita Adams, Lemacks instructs that a general verdict predicated on that one criminal occurrence is valid. Under this analysis and logic, we hold that Defendant Lekin was not deprived a unanimous jury.

### Aggravated Child Abuse Through Neglect

Finally, Defendant Lekin's argument that Aggravated Child Abuse by neglect is not a crime defined by statute in Tennessee is pretermitted. As regards this issue, this Court notes our Supreme Court's decision in State v. John Adams and Rita Adams, _____ S.W.3d _____ (Tenn. 2000), No. W1997-00190-SC-R11-CD (filed June 30, 2000, at Jackson), and concludes that Aggravated Child Abuse through neglect is an offense in Tennessee.

### CONCLUSION

Accordingly, we affirm the convictions of both defendants.

_____
JOHN EVERETT WILLIAMS, JUDGE