# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## ANTON MAYHEW v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 07-00039    W. Mark Ward, Judge**

**No. W2013-00973-CCA-R3-PC  -  Filed March 19, 2014**

The Petitioner, Anton Mayhew, filed a petition for post-conviction relief attacking his two jury convictions for aggravated robbery and resulting twelve-year sentence.  The post-conviction court denied relief following an evidentiary hearing, finding that the Petitioner had failed to prove his allegation of ineffective assistance of counsel by clear and convincing evidence.  In this appeal as of right, the Petitioner contends that trial counsel was ineffective for failing to request a severance of the Petitioner's trial from that of his co-defendant.  After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the appellant, Anton Mayhew.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

In August 2009, the Petitioner and his co-defendant were tried jointly before a Shelby County jury.  The Petitioner was convicted of two counts of aggravated robbery, and his co-defendant was convicted of those same two counts of aggravated robbery and one additional count of aggravated rape.  See State v. Anton Mayhew and Travis Brown, No. W2009-02184-CCA-R3-CD, 2011 WL 2672011 (Tenn. Crim. App. July 8, 2011), perm. app. denied,

(Tenn. Sept. 2, 2011). In the direct appeal opinion, this court recounted the following facts in support of the convictions[1]:

According to trial testimony given by the two victims and law enforcement officials in this case, Victim One (a male international student) was returning home from work during the early morning hours of August 22, 2002, to an apartment he shared with Victim Two (a female international student). After Victim One parked his car behind his building and began walking to the apartment, he was approached by the defendants, and one of the men held a gun to his head and told him to hand over all his money. After he did so, the defendants forced Victim One to lead them to his apartment, where they discovered Victim Two lying asleep in her bed. Defendant Mayhew hit Victim One in the eye with his gun and forced him into the bathroom while he ransacked the apartment. While Victim One watched from the bathroom, Defendant Brown forced Victim Two to perform an oral sex act on him. At the conclusion, Victim Two spit some of Defendant Brown's semen onto the bed and was forced to wipe his remaining semen off with her hand. The defendants then forced Victim Two into the bedroom closet and left, taking approximately six hundred dollars from the victims.

Victim One left the bathroom, assisted Victim Two, and telephoned 9-1-1. A police investigation was begun, and Victim Two was transported to the Memphis Sexual Assault research center, where a nurse took a DNA swab from her hand and noted that the victim had sustained an injury to her lip. Meanwhile, the police processed the crime scene. During this process, Victim Two's bed linens may have been collected and stored in the police property room. The following day, both victims provided a description of the perpetrators.

Soon thereafter, Victim Two was shown several photo lineups and erroneously identified an individual named James McMoore as one of her attackers. Mr. McMoore was arrested and charged with the attack, but these charges were later dismissed after neither victim identified him as a perpetrator at his preliminary hearing. The case went cold.

Approximately four years later, then-Detective Charles Shettlesworth, an officer in the Memphis Police Department who had been assigned the cold case, was informed by the Tennessee Bureau of Investigation ("TBI") that its testing database had matched the DNA sample taken from Victim Two's hand with Defendant Brown. Some weeks later, investigators obtained a saliva

---

[1] The Petitioner's and the co-defendant's appeals were also handled jointly: the Petitioner is referred to as Defendant Mayhew in the opinion, and his co-defendant is referred to as Defendant Brown therein.

sample from Defendant Brown that confirmed the DNA database match. The DNA match also led police to a second suspect, Defendant Mayhew, because these two individuals had been caught and convicted for committing a pair of aggravated robberies and an aggravated assault together a few days after the robberies in question and the rape of Victim Two. This suggested to police that the crimes committed on August 22, 2002, may have been the first stages of a larger crime spree committed by the defendants.

. . . .

Both victims were shown additional photo lineups containing the defendants. Victim Two identified both defendants from these lineups as her attackers on the night in question. Victim One also identified Defendant Mayhew as one of the attackers with 90% certainty.

. . . .

Prior to trial, Defendant Mayhew filed a motion in limine to prevent any witnesses from referencing the house robberies and other crimes he committed with Defendant Brown. The State sought to introduce evidence of the defendants' joint arrests in order to buttress the identification of the eyewitnesses. After a pretrial hearing, the trial court granted the defense's motion to exclude any evidence of the defendants' arrests and convictions. However, the trial court did permit Detective Shettlesworth to testify that, before preparing the photo lineups containing Defendant Mayhew's image that were later shown to the victims, Shettlesworth "was able to establish with conclusive evidence" that the two defendants were in contact with each other during the time period surrounding the crime.

. . . .

At trial, the State presented the testimony of both victims as described above, and both victims identified the defendants as their attackers. Prior to being identified by Victim Two and over his objection, the State had Defendant Brown stand next to an enlarged photo of Mr. James McMoore, presumably to show the physical similarities between the two men for purposes of helping to explain Victim Two's earlier misidentification of Mr. McMoore as her rapist. In addition to the testimony of the victims and Detective Shettlesworth, the State also presented during its case-in-chief the testimony of Officer Chavis Davis of the Memphis Police Department, who testified that he responded to and secured the initial crime scene, interviewed the witnesses, and made an initial crime report; Detective David Royal, who testified that he examined the crime scene and found it to match the victims' reports of what had transpired; Nurse Margaret Aiken, who testified that she treated Victim Two after the rape, administered a rape kit, and took DNA swabs of her hand and mouth; Officer Shan Tracy, who testified that he photographed the crime scene and processed and recovered the evidence; Officer Hyun Kim, who

collected the DNA evidence from Nurse Aiken, sent it to TBI for analysis, and secured it after testing was complete; Officer James Hill, who testified that he examined a latent fingerprint from the crime scene but was unable to match it to either defendant; Ms. Franchesca Sanders of the TBI, who testified that she received the DNA evidence sent by the Memphis Police Department and secured it in TBI's vault; and Dr. Qadriyyah Debnam of the TBI's Memphis Crime lab, who testified that he compared the DNA swab taken from Victim Two's hand and found that it did not match a sample taken from Mr. James McMoore but did match a saliva swab from Defendant Brown to a degree of probability that exceeded the world's population.

The defendants presented a single witness in their defense, Dr. Jeffrey Neuschatz, an associate psychology professor at the University of Alabama in Huntsville. Dr. Neuschatz testified that he had conducted numerous studies in the area of eyewitness identification and had discovered numerous problems associated with it, such as source confusion, difficulties in cross-racial identification, errors that may occur when eyewitnesses are given multiple identification chances, and the fact that stress may adversely affect eyewitness memory.

Id. at *1-3. This court affirmed on appeal, and our supreme court declined to review that decision. Id. at *1.

The Petitioner then filed a timely pro se petition for post-conviction relief. Thereafter, counsel was appointed, and an amended petition was filed, wherein the Petitioner alleged that he received the ineffective assistance of counsel at trial. As his single allegation of ineffective assistance, the Petitioner submitted the following:

Failure to seek a severance from co-defendant Travis Brown because there was DNA evidence linking [co-defendant] Brown to the case, but the victims could not positively identify [the Petitioner]. The only link to [the Petitioner] was his association with [co-defendant] Brown. This was error and unduly prejudicial which prevented the jury from [a] determination of [the Petitioner's] guilt or innocence[.]

A hearing was held in the post-conviction court, at which only the Petitioner and trial counsel testified.[2] The Petitioner testified that trial counsel did not file a motion to sever his case from his co-defendant's case, although the Petitioner requested that trial counsel file

_____

[2] We will limit our recount to the testimony relevant to the single issue of ineffective assistance of counsel presented.

-4-

such a motion. The Petitioner testified that he did not want to be tried with his co-defendant because there was DNA evidence linking his co-defendant to the crime. He stated that he discussed the matter with trial counsel and told trial counsel to file a motion to sever to alleviate "prejudice" due to the "concrete evidence against" his co-defendant. The Petitioner further explained how a joint trial was prejudicial to him: "The jury going be [sic] prejudiced by a man that supposed to have allegedly raped a woman. They found that DNA on the scene." Nonetheless, according to the Petitioner, trial counsel informed him that it was in his "best interest to go forward" with a joint trial.

The Petitioner confirmed that his defense at trial was one of misidentification, regardless of whose DNA was found at the scene, and that trial counsel called an expert witness in support of that defense. When asked what legal grounds he possibly had for a severance, the Petitioner replied, "It violated my Rule 8 for severance. . . . The co-defendant has a right to sever if a legal matter lead back [sic] to him." The Petitioner confirmed that he and his co-defendant sat next to each other at trial, with only their respective attorneys beside them.

Trial counsel testified that he considered filing a motion to sever so that the jury would not hear evidence about the rape. Furthermore, he agreed that the co-defendant's DNA found at the scene "strengthen[ed] the credibility of the State's witnesses[.]" Although he "strongly considered" filing such a motion, after researching the law, he chose not to do so. Trial counsel believed that, if he filed a motion to sever, it was possible that the Petitioner would then additionally have been charged with aggravated rape and exposed to more time in jail. When asked if the proof would have supported a rape charge against the Petitioner, trial counsel responded,

> And I thought that they could do that because if you read the victim's statements like [Victim Two], she talks about the fact that as [co-defendant] Brown was raping her, [co-defendant] Brown gave the gun to [the Petitioner] and then I think [the Petitioner] took [Victim One] into the bathroom as this rape was occurring.
> And then [Victim One's] statement talks about that too, I believe, that the gun -- that [co-defendant] Brown got the gun from [the Petitioner] or something to that effect.
> But the bottom line, it looks like from my reading of these statements -- and I think some of them were made an exhibit, but I think a jury -- you know, the State could have argued well, heck. [The Petitioner's] criminally responsible for this rape. He's in there exchanging guns. He's taking [Victim One] to another room.

Trial counsel also noted that Victim Two lived in England at the time of trial, and the State would not have wanted to expend money to fly her here for two, separate trials. Trial counsel classified his decision not file a severance motion as a "strategic decision[.]" Furthermore, he did not believe that a motion to sever would have been a "slam dunk" argument.

Trial counsel stated that he decided "to try to do the best [he could] with what [he] had and try to use the fact that there was no DNA on [the Petitioner] to kind of distinguish [the Petitioner's] case from the co-defendant." Trial counsel confirmed that the defense at trial was that the victims' identifications were not reliable and that he called an identification expert in support of that defense. First, trial counsel noted that Victim Two identified someone else as her rapist shortly following these crimes and did not identify the Petitioner until four years later. He then noted that Victim One "was only 90 percent sure" of his identification of the Petitioner and "had some doubt." According to trial counsel, once he decided to go forward with a joint trial, "the DNA was really not so much [an] issue[,]" and the co-defendant "really attacked" the DNA evidence at trial. Trial counsel opined that the Petitioner's defense of misidentification was "separate and distinct" from that of his co-defendant.

On cross-examination, trial counsel stated that, if the Petitioner's case would have been severed, then he would have filed a motion to exclude the DNA evidence placing the co-defendant at the scene. Trial counsel agreed that the DNA evidence was "pretty damaging evidence" and that the Petitioner was linked to the co-defendant through association. Trial counsel likened DNA evidence to a confession, stating that it was a "fair analogy" and might have been "worth arguing" if a severance motion had been filed. However, he also agreed that such evidence would have to implicate the Petitioner himself and that the DNA evidence in this case implicated solely the co-defendant. Trial counsel reiterated that he decided not file a motion to sever because he "didn't want to open up any worms in the indictment." Moreover, trial counsel opined, "I'm not totally sure just because two defendants are tried jointly and there's more evidence against one than there is another that that's a reason to sever[.]"

By order filed on April 12, 2013, the post-conviction court denied the Petitioner relief. This appeal followed.

## ANALYSIS

On appeal to this court, the Petitioner contends that trial counsel failed to provide the effective assistance of counsel at trial guaranteed to him by the United States and Tennessee constitutions, raising only trial counsel's failure to file a motion to sever his case from that of his co-defendant. Petitions for post-conviction relief are governed by the Post-Conviction

Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the petitioner must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The

performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

On appeal, the Petitioner contends that trial counsel was ineffective because he failed to file a motion to sever in this case. The post-conviction court determined that the Petitioner received the effective assistance of counsel in this regard. In so concluding, the court made the following findings of fact and conclusions of law:

> [Trial counsel] testified that he made a strategic decision not to ask for a severance for fear that it would lead to an amendment to the indictment adding a charge of rape against the Petitioner. This was a strategic matter within the realm of reason and within the range of competence for a criminal defense attorney. Petitioner has failed to show any "deficient performance." Furthermore, there has also been no showing of "prejudice." Had a motion to sever been pursued it would have been denied. There was no real legal reason to justify a severance. Further, even if it had been granted much of the same evidence would have been introduced in the separate trials. The eyewitness identifications of the Petitioner were corroborated by the fact that Petitioner was closely associated with [co-defendant] Brown who was also identified (by eyewitness and DNA) as a participant in the robbery.

The Petitioner acknowledges that disparity in the evidence against two defendants is not alone sufficient grounds to warrant a severance but submits that there were other factors in this case. According to the Petitioner, those other factors include the following: "[The Petitioner] was only implicated because of the DNA evidence that linked [co-defendant] Brown to the crime and from [co-defendant's] Brown past criminal association with [the Petitioner]. There were also problems with the identity of the assailants. . . . Clearly, the jury relied on 'guilt by association' evidence, 'a thoroughly discredited doctrine.'" The Petitioner further submits that, pursuant Rule 7(b)(2) of the Tennessee Rules of Criminal Procedure,[3] the State could not have amended the indictment to add an additional rape charge without the Petitioner's consent.

The State responds that the post-conviction court accredited trial counsel's testimony that he made an informed, strategic decision not to pursue a motion to sever and that, therefore, the Petitioner is not entitled to relief. The State notes that, if it chose to pursue a rape charge against the Petitioner, then it could have obtained a superseding indictment rather than amending the indictment under Rule 7(b)(2). Moreover, the State submits that the Petitioner failed to show that he had a basis to file a motion to sever his case from his co-defendant's, noting that both of the victims identified the Petitioner in photographic lineups prior to trial and again at trial. The State also contends that the Petitioner failed to present evidence to establish that he was prevented from presenting certain defenses or that being tried jointly led to the introduction of harmful evidence that would not otherwise have been admitted.

The question of severance is one addressed to the sound discretion of the trial judge, and this court will not reverse the trial court's ruling absent a clear abuse of that discretion. State v. Dotson, 254 S.W.3d 378, 390 (Tenn. 2008). The denial of a motion to sever will not be grounds for reversal unless it appears that the defendants were clearly prejudiced by the trial judge's refusal to sever. State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981). Defendants may be joined in the same indictment if the various offenses were either "part of a common scheme or plan" or "were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." Tenn. R. Crim. P. 8(c)(3). A defendant is entitled to a severance from other defendants if it is deemed

_____

[3] Rule 7 provides, in pertinent part, as follows:

(b) Amending Indictments, Presentments and Informations.
    (1) With Defendant's Consent. With the defendant's consent, the court may amend an indictment, presentment, or information.
    (2) Without Defendant's Consent. Without the defendant's consent and before jeopardy attaches, the court may permit such an amendment if no additional or different offense is charged and no substantial right of the defendant is prejudiced.

-9-

"appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(A). If an out-of-court statement of a co-defendant makes reference to the defendant but is not admissible against the defendant, then the trial court may grant a motion to sever if the State intends to offer the statement in evidence at trial. Tenn. R. Crim. P. 14(c)(1).

In this case, trial counsel testified that he "strongly considered" filing a motion for severance on the Petitioner's behalf but ultimately chose not to do so because it might have led to the Petitioner being charged with an additional count of rape. Trial counsel testified that the proof likely supported such a charge based upon a theory of criminal responsibility and noted that the State would want to save the expense of flying Victim Two from England twice for separate trials. Trial counsel did not believe that a motion to sever would have been a "slam dunk argument" and opined, "I'm not totally sure just because two defendants are tried jointly and there's more evidence against one than there is another that that's a reason to sever[.]" According to trial counsel, once he decided to proceed with a joint trial, "the DNA was really not so much [an] issue," and the Petitioner's defense of misidentification was "separate and distinct" from his co-defendant's defense of attacking the DNA evidence.

Additionally, the Petitioner's argument that the DNA evidence linking his co-defendant to the scene should be treated similarly as a confession is flawed. "The Bruton rule proscribes, generally, the use of one co-defendant's confession to implicate the other as being violative of the nonconfess[ing] co-defendant's Sixth Amendment right of confrontation." State v. Elliot, 524 S.W.2d 473, 477 (Tenn. 1975). The DNA evidence in this case implicated the co-defendant; it did not implicate the Petitioner. Evidence of the Petitioner's association with the co-defendant was crucial to the State's case, and although that case was bolstered by the DNA evidence, the DNA evidence itself did not implicate the Petitioner. Furthermore, the Petitioner's assertion that the jury relied on "guilt by association" fails to take into account the eyewitnesses' identifications of him.

Finally, the power to seek a superseding indictment lies within the broad discretion granted to the State. See State v. Harris, 33 S.W.3d 767, 771 (Tenn. 2000). A superseding indictment is obtained without the dismissal of a prior indictment. Id. "Although the State may not bring a superseding indictment to harass or intimidate the accused, a legitimate decision to bring a superseding indictment is uniquely within the State's authority." Id. Therefore, "the State may obtain a superseding indictment at any time prior to trial without dismissing the pending indictment and may then select the indictment under which to proceed at trial." Id.

Regardless of whether a superseding indictment could have or would have been obtained by the State in this case to add an additional rape charge, we conclude that the

post-conviction court correctly denied relief based upon the Petitioner's allegation of ineffective assistance of counsel for failing to file a severance motion. Given the "close connection" of the "time, place, and occasion" of the Petitioner and his co-defendant's crimes in this case, "it would be difficult to separate proof of one charge from proof of the others." See Tenn. R. Crim. P. 8(c)(3); see also Black v. State, 794 S.W.2d 752, 758 (Tenn .Crim. App. 1990) (A joint trial "contemplates that evidence may be admitted against one or more defendants which is not necessarily applicable to other defendants.") (citations omitted). Therefore, a motion by trial counsel for severance almost certainly would have been denied, as the post-conviction so determined.[4] Thus, trial counsel's decision to forgo a severance motion was objectively reasonable, and such decision did not prejudice the Petitioner. Because the Petitioner failed to prove either deficient performance or prejudice on this issue, he is not entitled to relief. See, e.g., Charles Wade McGaha v. State, No. E2010-01926-CCA-R3-PC, 2011 WL 2162987, at *10 (Tenn. Crim. App. May 26, 2011) ("The Petitioner did not present evidence to establish either that being tried jointly with his co-defendant prevented him from presenting certain evidence or defenses or that being tried jointly led to introduction of harmful evidence that would not otherwise have been admitted."); State v. Ladonte Smith, No. M2008-02095-CCA-R3-PC, 2010 WL 2836102, at *9 (Tenn. Crim. App. July 20, 2010) (holding that trial counsel's decision not to seek a severance was a reasoned, strategic choice).

## CONCLUSION

The Petitioner has failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel at trial. We, therefore, affirm the judgment of the post-conviction court denying relief.

_____
D. KELLY THOMAS, JR., JUDGE

---

[4] We note that the post-conviction judge was also the trial judge in this case.

-11-