IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2005 Session

## CORTEZ BENNETT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-D-2341       Steve Dozier, Judge**

---

**No. M2004-02640-CCA-R3-PC - Filed October 11, 2005**

---

A jury convicted the Petitioner, Cortez Bennett, of first degree premeditated murder, felony murder, attempted first degree murder, and two counts of especially aggravated robbery. This court affirmed the convictions on direct appeal and the Tennessee Supreme Court denied review. The Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after a hearing. The Petitioner appeals, contending that his trial counsel rendered ineffective assistance of counsel at trial. After thoroughly reviewing the record and the applicable law, we conclude that there exists no reversible error. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Charles Walker, Nashville, Tennessee, for the Appellant, Cortez Bennett.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Kristen Shea, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
#### A. Facts on Direct Appeal

As set forth in our Court's opinion on direct appeal, the proof at the Petitioner's trial established the following facts:

On June 29, 1999, the Appellants, Andre Mays and Cortez Bennett, were

1

together with Eric Booth and Tywaun Morrow drinking. Earlier that day, they had "snorted cocaine and smoked marijuana laced with cocaine." During the evening, Mays discussed with the others the robbery of Tonya and Wesley Tyler Sr. at their residence in Nashville. Booth drove to the area and parked several houses away from the Tylers' residence. Morrow and the Appellants exited the vehicle and went towards the house. Bennett was carrying a "tech nine," a large handgun, and Mays had a small caliber revolver. Morrow returned to the car shortly thereafter.

Around 11:00 p.m., Wesley Tyler Sr. heard his dog barking. He went downstairs to quiet the dog; while downstairs, Mr. Tyler heard his wife call his name. Mr. Tyler then proceeded upstairs and, as he came up the steps, he "saw [Petitioner] there with a gun on [his two] children there on the floor." Another child was asleep in a bedroom. Hearing Mr. Tyler come up the stairs, Bennett, who was wearing a ski-mask, pointed the gun at him. Mr. Tyler turned and ran back downstairs but stopped when he heard Mays call his name. Mr. Tyler recognized Mays['] voice, having previously met him several times. Mays pointed a gun at Mr. Tyler, told him to "shut up," and forced him upstairs.

Mays took money from the Tylers' dresser and then asked, "[W]here's the safe?" Mrs. Tyler responded that the safe was downstairs. Mr. Tyler offered to go get it, but Mays grabbed Mrs. Tyler and forced her downstairs. He stated to Mr. Tyler that he "was going to take care of [him] later." Bennett stayed in the living room with the children and Mr. Tyler. After several minutes had passed, Mays and Mrs. Tyler returned upstairs with the safe. Then, Mays and Mrs. Tyler went to her bedroom to retrieve the key. Upon their return to the living room, Mr. Tyler said, "you've got everything, you know, that we can give you. I mean, man, just take it and go." Mays then told Bennett to "hold on [before leaving the residence], . . . I'm going to take care of a little business first." Mays asked for Bennett's gun, and Bennett refused. Mays ordered Mr. and Mrs. Tyler to stand up and go into the bathroom. Mr. Tyler sat in the tub, and Mrs. Tyler sat on the toilet. Mays followed the couple into the bathroom, and Bennett stood outside the bathroom doorway. Mr. and Mrs. Tyler began to pray. Mays proceeded to shoot Mr. Tyler three times in the head. Mr. Tyler "laid over as if [he] was dead, but [he] wasn't dead." Mays then turned the gun on Mrs. Tyler and shot her twice in the head. The Appellants ran from the residence, carrying a small grey safe and guns.

Mr. Tyler, hearing his children "running around," got out of the tub and checked on his wife, who was not moving. He then crawled into the kitchen and phoned 911, but he was unable to speak because his vocal cords and jawbone were damaged. Wesley Tyler Jr., then five years old, spoke with the 911 officer and gave her the pertinent information. Both Mr. and Mrs. Tyler were transported to the hospital for treatment. Mrs. Tyler died as a result of her injuries; however, Mr. Tyler survived. During the ambulance ride to the hospital, Mr. Tyler wrote on a bag, "Dre

2

from north Sixth shot me." [FN1]

> FN1. At trial, testimony established that Mays, whose first name is Andre, is commonly referred to as Dre.
>
> After leaving the residence, the Appellants and Booth and Morrow drove to a nearby Nashville residence and divided the money. The Appellants and Booth returned to the car and, in a nearby alley, threw out the revolver, the safe, some gloves, and a dark shirt. Subsequently, Wesley Tyler Sr. and Jr. identified Mays from a photo array, but only Wesley Tyler Sr. was able to identify Bennett from a photo array. Rings, belonging to Tonya Tyler, were discovered in Mays' pocket.
>
> All four men were arrested and, on October 19, 1999, were indicted for Count I, first degree murder of Tonya Tyler; Count II, felony murder of Tonya Tyler; Count III, especially aggravated robbery of Tonya Tyler; Count IV, attempted first degree murder of Wesley Tyler Sr.; and Count V, especially aggravated robbery of Wesley Tyler Sr. After a trial by jury, Bennett and Mays were found guilty of all charges. Count II was merged with Count I, and the Appellants received a total sentence of life imprisonment plus fifty years. This appeal followed.

State v. Andre Mays and Cortez Bennett, No. M2001-02151-CCA-R3-CD, 2002 WL 31385939, at *1-2 (Tenn. Crim. App., at Nashville, Oct. 22, 2002), *perm. app. denied* (Tenn. 2003). In that opinion on direct appeal, this Court affirmed the Petitioner's convictions and sentences.

## B. Post Conviction Facts

The Petitioner timely filed a petition for post-conviction relief, and the post-conviction court appointed counsel for the Petitioner. At an evidentiary hearing on the Petitioner's petition for post-conviction relief, the following evidence was presented:

The Petitioner testified that his trial counsel ("Counsel") was retained to represent him at the preliminary hearing and at trial. The Petitioner testified that Counsel did not adequately investigate his case, and, had she done an adequate investigation, he would have been found not guilty. The Petitioner said that Counsel did not visit him a lot, and she did not return his pages. He said that Counsel never discussed with him hiring a private investigator. The Petitioner stated that Counsel failed to adequately investigate because she failed to interview the Petitioner's co-defendants, Mays, Booth, and Morrow. Further, Counsel failed to file a motion to sever the Petitioner's trial from his co-defendants' trial. The Petitioner said that he was not aware that his co-defendants received reduced sentences in exchange for testifying against him. The Petitioner also complained that Counsel did not show him transcription notes that she made while she watched video tape recordings of the police interviews of some of the witnesses in this case, and she did not provide him with any of her notes from the interviews she conducted.

3

The Petitioner stated that Counsel was ineffective because she did not investigate a prior inconsistent statement made by Robert Jacobs. The Petitioner testified that, before trial, he did not know about Jacobs, the victim's neighbor who called the police, but he became aware of Jacobs' prior inconsistent statements after reading the trial transcripts. He said that Counsel never discussed Jacobs with him.

The Petitioner testified that Counsel was ineffective because she did not properly evaluate the strength of the State's case. He said that she did not discuss the strength of the case with him, and she did not discuss with him the possibility of any plea offers. The Petitioner said that no plea offers were ever made available to him.

The Petitioner testified that Counsel was ineffective because she failed to properly develop a trial strategy. First, the Petitioner asserted, Counsel should have allowed him to testify, and he told Counsel that he wanted to testify. Second, Counsel should have raised as a defense the Petitioner's diminished mental capacity. The Petitioner stated that Counsel knew that, at the time of this offense, the Petitioner was under the influence of drugs and alcohol. The Petitioner said that, at the time of this crime, he was sick and intoxicated, and he did not know what he was doing. He said that he was not thinking about robbing or killing anyone, and he was just riding in the car with his co-defendants.

The Petitioner testified that Counsel was ineffective for not calling to the jury's attention that, at the preliminary hearing, the victim said that the Petitioner shot him, but, at trial, the victim said that the Petitioner did not shoot him. Further, the Petitioner testified that Counsel did not adequately investigate the testimony that the victim's nurse would provide.

Finally, the Petitioner asserted that Counsel was ineffective for failing to request some necessary jury instructions. Petitioner testified that Counsel should have asked for a limiting instruction regarding the co-defendants' testimony. He testified that some limiting instructions were given regarding the photographic identifications. He testified that Counsel did not go over the jury instructions with the Petitioner and that he never saw a copy of the jury charge.

On cross-examination, the Petitioner testified that Counsel's strategy at trial was to claim that the State could not prove beyond a reasonable doubt that the Petitioner was present at the crime scene. The Petitioner testified that he did not give Counsel any alibi witnesses, but Counsel called some of his associates to testify. When on the stand, these witnesses said that the Petitioner was with them when the crime took place. He testified that he was not present when Counsel spoke with the alibi witnesses that she called to testify at his trial.

The Petitioner stated that his main complaint about Counsel's performance was that she failed to adequately investigate his case. He stated that Counsel should have spoken with Jacobs, the detectives, his co-defendants, and the victim's nurse and doctor.

The Petitioner testified that he knew that Counsel had filed a motion to sever his case from those of his co-defendants, but he did not know that she filed the motion because the State planned

to introduce statements that Mays made against the Petitioner. He said that Counsel told him that the co-defendants did not have any deals with the State to have their sentences reduced in return for their testimony against the Petitioner. He remembered that Counsel asked his co-defendants about any such deals when they testified. The Petitioner stated that Counsel never discussed her strategy with him. He stated that Counsel asked him to name some of his friends, but he did not know why Counsel called them as witnesses.

Counsel testified that, before trial, the District Attorney's Office provided her with all the police reports regarding this case, and she took advantage of the State's offer for open file discovery. She said that she listened to all of the tapes that the officers made of their interviews with witnesses for the case, and she transcribed notes for all of the videotapes. She also said that she spoke with the police officer responsible for identifying objects so that she could understand his testimony, but she did not believe that she needed to speak with any of the other police officers. She said that any time she was in court and police officers were there she would look through her file to see if they had any information that would be useful to the Petitioner's case.

Counsel testified that she talked with the Petitioner, witnesses, and the Petitioner's co-defendants in preparation for trial. She said that, right before trial, she interviewed some people that the Petitioner gave to her as his alibi witnesses. She testified that she interviewed Jacobs, and she had notes from her conversation with him. She testified that one of the victims' children told Jacobs that "they just killed Mommy," but that Jacobs did not have any information regarding the Petitioner's identification. Counsel said that she noted that Jacobs had some inconsistencies in his testimony regarding the timing of the 911 calls that he made, but she did not want to focus on this issue because doing so might cause her to lose credibility with the jury.

Counsel testified that she spoke with the co-defendants' attorneys and asked them if she could speak with their clients, but the attorneys would not allow her to speak with their clients. Counsel testified that she watched videotapes of police interviews with Eric Booth and Tywaun Morrow. Counsel testified that she reviewed the preliminary hearings held for the Petitioner and his co-defendants. She said that the transcript from Petitioner's preliminary hearing contained statements made by the surviving victim saying that Andre Mays was the shooter. She explained that, as she recalled the case, the Petitioner was not accused of being the shooter during the preliminary hearing or during trial. Counsel said that she looked through the preliminary transcript and used it in preparation for trial.

Counsel testified that she believed that the victim and the co-defendants were the State's main witnesses in its case against the Petitioner. She said that the Petitioner told her that he was not at the crime scene on the night of the murder and that he had some alibi witnesses. Counsel believed that challenging the State's ability to identify the Petitioner was his best defense. She stated that she thought it was possible to convince the jury that the State did not provide a reliable identification of the Petitioner as a perpetrator at the crime scene. She said that she made these evaluations based on the information that she received from the Petitioner.

Counsel testified that she did not use the transcripts from the preliminary hearings to impeach Eric Booth and Tywaun Morrow because neither of the co-defendants testified during the preliminary hearings. She stated that she could not use any inconsistent statements made by other witnesses at the preliminary hearings to impeach Booth and Morrow. Therefore, Counsel used information from videotaped interviews with Morrow and Booth to impeach them. Counsel stated that she felt like she was "tap-dancing a fine line" when cross-examining Morrow and Booth because they both stated that Petitioner was with them during the murder in their videotaped interviews from the night they were arrested. Counsel stated that the Petitioner's case would be damaged if the jury found out that the co-defendants implicated the Petitioner on the night that they were arrested.

Counsel stated that she did not recall how may times she met with the Petitioner. She said that she met with the Petitioner every time that they were in court together in order to tell him what was going to happen in court, and that she was in court often regarding the Petitioner's case. She also recalled meeting with the Petitioner several times at the Criminal Justice Center. She estimated that she met with the Petitioner ten to fifteen times over the course of the case. Counsel testified that she explained to the Petitioner the nature of the charges and the possible penalties for the offenses. Counsel testified that she gave him copies of the discovery and the indictment.

Counsel testified that, although she did not know if she discussed each witness with the Petitioner, she definitely discussed all the main witnesses with him, and she told him what she thought the main theory of the State's case would be. She said that she told the Petitioner what the trial would be like, and she asked him if he had any witnesses that he could call in his defense. Counsel testified that she spoke with all the witnesses provided to her by the Petitioner. Counsel said that, when going into trial, she felt that she had exhausted all the means available to her to prepare for the trial.

Counsel testified that she did not track down all the witnesses that the Petitioner listed because, after listening to the audiotapes of their statements, she realized that their statements mostly revolved around what they were doing when Mays, Booth, and Morrow were arrested. She said that their statements did not provide any indication that they knew the Petitioner, and that she did not believe that any of the witnesses could provide any information that would be helpful for the Petitioner's defense.

Counsel testified that when she cross-examined the co-defendants she aimed to "essentially look [at the fact] that they're getting, a sweet deal for doing this. At the time, the deal wasn't set in stone, but just that they were getting a sweet deal and that they were facing life." Counsel stated that there were some inconsistencies in the co-defendants' statements but that she did not focus on them significantly because she did not want the prosecutor to refer to the statements that the co-defendants made on the night they were arrested. She said that she believed that the prosecutor made a statement on the record that the co-defendants were receiving a deal in exchange for their testimony. Counsel stated that she used this information when cross-examining the defendants.

6

Counsel testified that she filed a motion for a severance from Andre Mays based on the fact that Mays had made a statement that inculpated the Petitioner. Counsel testified that the use of this statement was her only ground for requesting a severance. She said that, after she filed the motion, the prosecutor said that he would not introduce Mays' statement. Counsel said that she then had to withdraw the motion because she no longer had grounds for requesting a severance. Counsel stated that she requested and received a jury instruction regarding accomplice testimony, which cautioned the jury about how to evaluate the testimony of accomplices.

Counsel stated that she never discussed using the Petitioner's mental state as a defense with the Petitioner because the use of such a defense involves admitting that you were at the scene of the crime. Counsel said that the Petitioner never told her that he was at the scene of the crime and that he was there due to his intoxicated state. She said that, although the Petitioner told her that he used drugs on the night of the crime, he never told her that he was at the scene of the crime. She stated that she never felt like the Petitioner's drug use and incoherent state on the night of the crime was a pertinent issue in the case.

Counsel testified that she never had a communication problem with the Petitioner. Counsel stated that the Petitioner is a very intelligent client and that she never doubted his ability to assist her when preparing for trial. She said that she never felt like the Petitioner was on drugs while he was in jail.

Based of the foregoing evidence, the post-conviction court dismissed the Petitioner's petition for post conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the post conviction-court erred when it dismissed his petition because Counsel was ineffective. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. Burns, 6 S.W.3d at 461.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); Burns, 6 S.W.3d at 461; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The following two-prong test directs a court's evaluation of a claim for effectiveness:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989). In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Strickland v. Washington, 466 U.S. 688 (1984)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988).

The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Finally, we note that criminal Petitioners are not entitled to perfect representation, only constitutionally adequate representation. Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665, n.38 (1984)).

Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House, 44 S.W.3d at 515 (citation omitted); Thomas Brandon Booker v. State, No. W2003- 00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. 2004). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones

based upon adequate preparation.  House, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).  To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt.  Strickland, 466 U.S. at 695.  This reasonable probability must be "sufficient to undermine confidence in the outcome."  Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

On appeal, the Petitioner claims that his trial Counsel failed to function as effective counsel as guaranteed by both the Tennessee and United States Constitutions. In this regard, he asserts that he was denied the effective assistance of counsel at both the guilt and penalty phase of his trial because Counsel failed to meet these standards in the following ways:

1. Counsel failed to adequately investigate the case;
2. Counsel failed to interview all of the State's witnesses;
3. Counsel failed to interview and investigate prior inconsistent statements of Robert Jacobs, an adverse witness;
4. Counsel failed to properly raise Petitioner's mental capacity as a defense;
5. Counsel failed to obtain and review a copy of the Petitioner's preliminary hearing transcript prior to trial to properly investigate and impeach the testimony of Eric Booth and Tywaun Morrow;
6. Counsel failed to investigate and interview Andre Mays, Eric Booth and Tywaun Morrow;
7. Counsel failed to adequately meet with the Petitioner;
8. Counsel failed to properly develop trial strategies and determine weaknesses in the State's case;
9. Counsel failed to investigate, interview, and subpoena several alibi witnesses;
10. Counsel failed to properly cross-examine and present evidence against Tywaun Morrow, Andre Mays, and Eric Booth;
11. Counsel failed to move for a severance from co-Petitioner Andre Mays;
12. Counsel failed to investigate and obtain the pretrial statements of Eric Booth and Tywaun Morrow;
13. Counsel failed to reveal the deal that Eric Booth and Tywaun Morrow had received in exchange for their testimony at Petitioner's trial;
14. Counsel failed to allow Petitioner to testify at his trial after requesting Counsel to allow him to testify in his own defense;
15. Counsel failed to request the Dyle Instruction to the jury on identification.

## A. Failure to Investigate Case

The Petitioner claims that Counsel was ineffective by failing to adequately investigate the case. Specifically, the Petitioner alleges that Counsel failed to interview certain witnesses and to adequately address inconsistencies in the testimony of opposing witnesses. The Petitioner claims that, therefore, Counsel failed to conduct a reasonable investigation. The State argues that Counsel conducted a reasonable investigation of the case as evidenced by her testimony that she met with the Petitioner "ten to fifteen times," interviewed all witnesses, reviewed videotapes, and performed additional investigations which included visiting a location where events pertaining to the case had occurred. The post-conviction court accredited Counsel's testimony and concluded that "counsel did adequately investigate the case, and the Petitioner has failed to demonstrate how he was prejudiced by this allegation."

The Tennessee Supreme Court has held that:

Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that 'all available defenses are raised' so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research.

Burns, 6 S.W.3d at 462 (quoting United States v. DeCoster, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)). Therefore, Counsel must make all reasonable investigations relevant to the case or must make a reasonable decision that renders particular investigations necessary. Id. However, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. Failure to conduct a reasonable investigation constitutes deficient performance. Id.

Based on our review of the record, we conclude that the Petitioner has not demonstrated that Counsel failed to conduct a reasonable investigation of the case. Counsel frequently met with the Petitioner, took advantage of all materials that the District Attorney's Office allowed her to review, transcribed notes for all the videotapes that police officers made of witness interviews, and spoke with all relevant and available witnesses. Furthermore, the Petitioner has failed to demonstrate how any alleged failure to investigate negatively effected the outcome of his case, and we find that the Petitioner is not entitled to relief on this issue.

## B. Failing to Interview and Subpoena Witnesses

The Petitioner also claims that Counsel failed to investigate, interview, and subpoena several different alibi witnesses. The trial court concluded that:

> The proof by counsel shows that these witnesses would not have been alibi witnesses at the time of the offense. Counsel did review the statements given by . . . "alibi" witnesses to police and determined that they would not offer any support for this defense. Additionally, the Petitioner did not present one of the mentioned witnesses at this hearing in support of his theory. As such the Court must dismiss this ground without further consideration pursuant to Black v. State, 749 [sic] S.W.2d 752 (Tenn. Crim. App. 1990).

In order for a petitioner to establish prejudice from his attorney's failure to locate a witness, the petitioner must have this witness testify at the post-conviction hearing. Roy L. Sherrod v. State, No. 02C01-9806-CR-00164, 1999 WL 450237, at 7 (Tenn. Crim. App., at Jackson, June 30, 1999), no Tenn. R. App. P. 11 application filed; see also Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a witness or what that witness' testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757.

At his post-conviction hearing, the Petitioner failed to produce any of the witnesses whom he claims Counsel failed to investigate, interview, and subpoena. The Petitioner did not present any testimony or affidavits from these witnesses. The Petitioner provided no evidence to describe the testimony that he expected to receive from the witnesses whom he alleges Counsel failed to call. Therefore, as a matter of law, this Court cannot speculate or guess as to what these witnesses' testimony might have been. Therefore, the Petitioner is not entitled to any relief on this issue.

## C. Failing to Interview All of the State's Witnesses

The Petitioner next claims that Counsel was ineffective by failing to interview all of the State's witnesses. The Petitioner alleges that Counsel should have spoken with all of the officers who testified at trial. The Petitioner also argues that Counsel should have interviewed the co-defendants in the Petitioner's case since the State intended to call them to testify. The State argues that Counsel tried to interview all of the co-defendants in the Petitioner's case, but their lawyers refused to allow them to speak with Counsel. Further, the State asserts that the Petitioner failed to show how interviewing the police would have "altered the calculus for the defense." The post-conviction court found that the Petitioner offered limited proof that Counsel failed to interview all of the State's witnesses. The post-conviction court also found that Counsel interviewed all of the State's witnesses that she could under the ethical rules. Therefore, the post-conviction court held that Petitioner failed to prove that Counsel's conduct was ineffective.

After our review of the record, we conclude that the evidence does not preponderate against

the post-conviction court's finding. The Petitioner has failed to demonstrate that Counsel was ineffective for failing to interview all of the State's witnesses. Due to ethical considerations, Counsel could not interview the co-defendants in the Petitioner's case. Counsel took all possible measures to prepare for the co-defendants' testimony at trial by reviewing the videotapes of their interviews with police officers and the records from their preliminary hearings. Counsel's decision to forego interviewing the police officers was not unreasonable. Counsel saw the police officers involved with the Petitioner's case in court, and she made sure that they could not add any information to her case. This decision falls within the wide range of professionally competent assistance mandated by Strickland. Therefore, we conclude that Counsel did not provide ineffective assistance when deciding not to interview all of the State's witnesses. In addition, the Petitioner failed to establish any prejudice as a result of Counsel's performance. Thus, the Petitioner is not entitled to relief on this issue.

### D. Failure to Investigate Prior Inconsistent Statements

The Petitioner claims the trial Counsel was ineffective by failing to adequately investigate prior inconsistent statements made by Jacobs, the victim's neighbor, who called the police on the night of the murder. Specifically, the Petitioner alleges that any inconsistencies in Jacobs' statements about the 911 calls should have been investigated and brought to the jury's attention. The State argues that Counsel would not have helped the Petitioner's case by quibbling over minor inconsistencies in Jacobs' testimony. Further, the State asserts that Counsel's decision to refrain from arguing that an adverse witness was inaccurate by thirty minutes for purposes of impeachment was imminently reasonable. Counsel testified that she did interview Jacobs and investigate any prior inconsistent statements made by Jacobs. The trial court accredited Counsel's testimony and found that the Petitioner offered no proof to the contrary at the hearing.

"[C]ross-examination is a strategic and tactical decision of trial counsel which is not to be measured by hindsight," State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Counsel's strategical decision to refrain from focusing on minor inconsistencies does not entitle the Petitioner to relief. No evidence indicates that Counsel failed to adequately investigate Jacobs' prior inconsistent statements. Counsel phoned Jacobs to investigate the case and transcribed notes to document their conversation. Counsel testified, "I'm . . . not going to argue to a jury that a witness was inaccurate by thirty minutes on a time on something like this. I think you lose your credibility with a Jury." This decision does not "fall below the objective standard of reasonableness" required to prove ineffective assistance of counsel. Instead, Counsel's decision reflects sound, strategic thinking. Since the Petitioner failed to provide clear and convincing evidence that he received ineffective assistance of Counsel due to a failure to investigate Jacobs' statements, the Petitioner is not entitled to relief on this issue.

## E. Failure to Cross-examine Co-defendants

The Petitioner claims that Counsel was ineffective by failing to properly cross-examine and present evidence against Tywaun Morrow, Andre Mays, and Eric Booth. The State argues that Counsel did cross-examine Booth and Morrow, and she did not cross-examine Mays because he did not testify. The State also argues that Counsel's cross-examination of the Petitioner's co-defendants was proper in consideration of her strategic concerns. The trial court concluded that:

> The proof at trial showed that Counsel did an extensive cross examination of co-defendant with any prior inconsistent statements since the statements they offered at trial were consistent with statements to police immediately upon their arrest. The Court accredits the testimony of [counsel] and finds the Petitioner has not carried his burden as to this issue by clear and convincing evidence.

The evidence does not preponderate against the findings of the trial court. Counsel provided sound reasons for her decision to focus on any inconsistencies in the co-defendants' testimony. She did not want the Prosecutor to use their earlier statements to bolster their credibility. Counsel's attempt to point out inconsistencies, while keeping the jury from hearing consistent statements made by the co-defendants on the night of the co-defendants' arrests does not fall below the standard of reasonableness required to show ineffective assistance of council. The Petitioner has also failed to prove prejudice because he provided no evidence to establish that Counsel's cross-examination of the co-defendants affected the outcome of his case. Thus, Petitioner is not entitled to relief on this issue.

## F. Failure to Develop a Trial Strategy

The Petitioner also claims that Counsel was ineffective by failing to properly evaluate the strength of the State's case and develop a trial strategy. The Petitioner asserts that Counsel should have focused on his defense of nonparticipation rather than the State's inability to credibly identify the Petitioner at the crime. The Petitioner asserts that Counsel erred by making the case "an I.D. and alibi case." The State argues that Counsel pursued her chosen strategy because the Petitioner told her that he was not at the scene, and he gave her the names of alibi witnesses that provided testimony consistent with his statements. The post-conviction court found that Counsel made a proper evaluation of the strength of the State's case and apprised the Petitioner of this evidence and possible sentences. The post conviction court also found that Counsel pursued the only strategy available to her based on the Petitioner's testimony and actions.

The advice given and the services rendered by an attorney in a criminal case must be "within the range of competence demanded of attorneys in criminal cases." Baxter, 523 S.W.2d at 930. Counsel should discuss fully potential strategies and tactical choices with his client. Hellard, 629 S.W.2d at 9. The fact that a particular strategy or tactic hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made for sound trial strategy if the choices are informed and based upon adequate preparation. Id.

13

We conclude that the evidence does not preponderate against the post-conviction court's findings that Counsel pursued in a competent manner the only strategy available to her. Counsel's strategic trial decisions were well within the range of adequate professional judgment. The Petitioner provided no evidence that Counsel displayed a lack of preparation for trial or inadequate knowledge of the law and the evidence for the Petitioner's case. Counsel attempted to establish an alibi for the Petitioner's whereabouts at the time that the murder and robbery occurred. Counsel used all of the information provided by the Petitioner in order to develop an effective trial strategy. Counsel discussed the strength of the State's case and possible sentences with the Petitioner. Therefore, we conclude that Counsel's trial strategy "falls within the wide range of reasonable professional assistance," and that the Petitioner is not entitled to relief on this issue.

### G. Mental capacity

The Petitioner claims the trial Counsel was ineffective by failing to properly raise his mental capacity as a defense. The Petitioner testified that he had used drugs and was heavily intoxicated on the day of the event and that he provided this information to Counsel, and he contends that Counsel should have raised mental capacity as a defense. The State argues that Counsel had no reason to raise mental capacity as a defense since the Petitioner told her that he was not at the scene of the crime. Counsel testified that she believed that the Petitioner wanted her to present an alibi defense. The post-conviction court accredited the testimony of trial Counsel and concluded that, "Thus, the Petitioner's mental capacity at the time of the offenses would be irrelevant."

We note that we do not evaluate Counsel's actions in hindsight, but, based on the facts known to Counsel at the time of trial. Since Counsel was told by the Petitioner that he was not at the crime scene and wanted to present an alibi defense at the time of trial, Counsel was not ineffective when making the decision not to raise the Petitioner's mental capacity as a defense. Therefore, the Petitioner is not entitled to relief on this issue.

### H. Failing to Obtain Preliminary Hearing Transcript

The Petitioner also claims that Counsel was ineffective by failing to obtain and review a copy of the Petitioner's preliminary hearing transcript prior to trial. The Petitioner asserts that he was not provided with a complete preliminary hearing transcript prior to trial. He asserts that Counsel failed to adequately use his preliminary hearing transcript to investigate and impeach the testimony of Eric Booth and Tywaun Morrow. The State argues that even if the Petitioner did not receive a copy of his preliminary hearing transcript before trial, he failed to show how this prejudiced his case. The trial court accredited the testimony of Counsel and concluded that:

> The petitioner . . . failed to meet his burden as to how this prejudiced his case by clear and convincing evidence since the transcripts were available and were used as much as possible. No transcript of the co-defendant's preliminary hearings would contain their testimony since they did not testify.

14

We conclude that the post-conviction court did not err when it held that the Petitioner failed to establish that his case was prejudiced because he did not receive a copy of his preliminary hearing transcript before trial. The Petitioner offers no evidence that there was a reasonable probability that the outcome of his case would have been different had he received a copy of the preliminary hearing transcript before trial. Therefore, Counsel's alleged failure to provide the Petitioner with a copy of the preliminary hearing transcript does not entitle the Petitioner to relief. We conclude that the Petitioner is not entitled to relief on this claim.

### I. Motion for Severance From Co-defendant

The Petitioner claims that Counsel was ineffective by failing to move for a severance from co-defendant, Andre Mays. The State argues that Counsel did, in fact, file a motion to sever but that the motion was mooted when the prosecutor stated that he would not introduce Mays' statement that inculpated the Petitioner. The trial court found that the evidence showed that Counsel filed a motion to sever and that the Petitioner did not carry his burden regarding this issue.

The question of severance is one addressed to the sound discretion of the trial judge. The denial of a motion to sever will not be grounds for reversal unless it appears that the defendants were prejudiced by the trial judge's refusal to sever. State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981). Defendants may be joined in the same indictment if the various offenses were either "part of a common scheme or plan" or "were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." Tenn. R. Crim. P. 8(c)(3)(i)(ii). A defendant is entitled to a severance from other defendants if "it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(i). If an out-of-court statement of a co-defendant makes reference to the defendant but is not admissible against the defendant, then the trial court may grant a motion to sever if the State intends to offer the statement in evidence at trial. Tenn. R. Crim. P. 14(c)(1).

In the case under submission, the evidence does not preponderate against the post-conviction court's findings. The post-conviction court examined the facts and circumstances of the Petitioner's case, and determined that the Petitioner failed to show that Counsel's actions regarding the motion to sever prejudiced the outcome of his case. Had Counsel filed a motion for severance, the trial court most likely would have denied the motion because Petitioner's offenses were part of a common scheme or plan, and the prosecution had decided not to introduce the co-defendant's statement into evidence. The Petitioner failed to show any other arguments that Counsel could have made to show that a severance was "appropriate to promote a fair determination of the guilt or innocence" of the Petitioner. Since Counsel had no grounds for a motion to sever, her decision to withdraw the motion was not unreasonable. Since the Petitioner failed to prove that Counsel was ineffective or how he was prejudiced by Counsel's conduct, he is not entitled to relief on this issue.

### J. Failure to Reveal Deal Co-defendants Received in Exchange for Testimony

15

The Petitioner claims that trial Counsel was ineffective by failing to reveal the reduced sentence that Eric Booth and Tywaun Morrow received in exchange for their testimony. The Petitioner asserts that, although Counsel stated that she filed a motion to reveal the deal, he believes that Counsel was ineffective by not providing him with this information. The State argues that the trial court accredited the testimony of Counsel and concluded that Petitioner failed to show that his case was prejudiced because he was not informed of the deal that Booth and Morrow received. The post-conviction court found that Petitioner failed to carry his burden on this issue.

The Petitioner has failed to provide any evidence indicating that, but for Counsel's conduct, the jury would have had reasonable doubt regarding the Petitioner's guilt. During the cross-examination of Petitioner's co-defendants, Counsel discussed the deal that the co-defendants received for their testimony before the jury. Nevertheless, the jury convicted the Petitioner on all counts. We conclude that the evidence does not preponderate against the trial court's findings, and that the Petitioner is not entitled to relief on this claim.

### K. Petitioner's Failure to Testify at Trial

The Petitioner asserts that Counsel was ineffective by not allowing the Petitioner to testify at his trial after he requested counsel to allow him to testify in his own defense. The State asserts that there was a <u>Momon</u> hearing at trial, and that the court informed the Petitioner of his right to testify. The State argues that the Petitioner knowingly and voluntarily waived his right to testify. The trial court found that the Petitioner decided not to testify after a <u>Momon</u> hearing had been conducted and the trial court and Counsel asked him if he wanted to testify. The post-conviction court found that the issue was without merit.

It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). Because the burden is upon the defendant to demonstrate the impropriety of his or her conviction, "failure to include a transcript of the trial makes it impossible for [this Court] to conduct an appropriate <u>de novo</u> consideration of the case or to determine whether the trial court erred relative to its determinations which were based in any part on that evidence." <u>State v. Hayes</u>, 894 S.W.2d 298, 300 (Tenn. Crim. App. 1994); <u>State v. Wilkerson</u>, 905 S.W.2d 933, 934 (Tenn. 1995).

The Petitioner has not made the relevant part of the trial transcript that covers the <u>Momon</u> hearing a part of the appellate record. Since the Petitioner has failed to meet his duty to provide this Court with relevant portions of the trial transcript, this Court has no evidence that contradicts the findings of the post-conviction court. Consequently, we must uphold the findings of the post-conviction court, and the Petitioner is not entitled to relief on this issue.

16

## L. Failure to Request <u>Dyle</u> Instructions

The Petitioner claims that Counsel was ineffective by failing to request that a <u>Dyle</u> instruction be given to the jury contemporaneously with the introduction of objectionable identification evidence. The State alleges that the Petitioner offered no proof related to this claim at the post-conviction hearing. The State also notes that a review of the record revealed that the <u>Dyle</u> instruction was, in fact, given to the jury. The post-conviction court found that the Petitioner presented no evidence at the hearing to prove his claim. After reviewing the record, the post-conviction court found that the <u>Dyle</u> instruction was given to the jury. Therefore, the post-conviction court found that the Petitioner was not entitled to relief on this issue.

Under <u>State v. Dyle</u>, 899 S.W.2d 607 (Tenn. 1995), it is plain error to fail to give the instruction on identification when identification is a material issue. Such instructions are necessary "when either (1) the defendant puts it at issue, or (2) the witness testimony is uncorroborated by circumstantial evidence." <u>Id</u>. at 612 n.4. If the defense fails to request the instruction when identity is a material issue, then such failure is to be reviewed under a Rule 52 harmless error standard. <u>Id.;</u> Rule 52(a) of the Tennessee Rules of Criminal Procedure.

We find that the evidence does not preponderate against the finding of the post-conviction court. The Petitioner offered no evidence to contradict the post-conviction court's finding that a <u>Dyle</u> instruction was provided. The Petitioner failed to provide any evidence showing that Counsel failed to request the <u>Dyle</u> instruction at an appropriate time. Without any such evidence in the record, this Court cannot question the post-conviction court's finding. Therefore, we conclude that Petitioner is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

17